# Woodruff *v.* Gunton, Appellant (No. 1).

*Mines and mining—Rental—Interest on deferred payments.*

Where a coal lease provides that if by reason of a strike or other cause over which the lessee has no control, continuing longer than one month, the lessee shall be prevented from mining the minimum quantity of coal for the year, the mine rent may be abated proportionately, provided that three months' rent shall in any event be paid, and the lessee in an action for rental testifies that he was prevented from mining for a certain length of time by causes over which he had no control, but in a previous trial testified that the delay was due to lack of funds, it is for the jury to say whether the lessee should pay interest on the deferred payments of rental. In such a case if the jury should find that the lessee had been delayed by reason of the lack of money in the prosecution of his work, he would properly be charged with interest on the deferred payments.

*Mines and mining—Coal lease—Culm—Net profits.*

A mining lease provided a certain price "for all coal that will pass over a screen of an eighth of an inch mesh and all that will pass through is to be classified as culm, and for said culm that it sold the said lessee is to pay the lessors one-tenth of the net profit of said culm." In an action to recover for the profit on the culm the lessee contended that the entire cost of mining the coal and culm was to be taken into account in determining what were the net profits on the culm. The lessor introduced evidence which tended to show that it was impossible for the lessee to mine and prepare the royalty coal for market without producing culm, and that when the culm was sold by the defendant, the entire amount received for the same, less the cost of loading it, was net profit, as it had cost the lessee nothing to produce it. *Held,* that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued March 17, 1908. Appeal, No. 331, Jan. T., 1907, by

plaintiff, from judgment of C. P. Sullivan Co., May T., 1903, No. 68, on verdict for plaintiff in case of William L. Woodruff v. Walter B. Gunton.   Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.   Affirmed.

Assumpsit for royalties under a coal lease.   Before TERRY, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the court charged in part as follows:

[Now the plaintiff has called on the stand witnesses who are familiar with the process of mining anthracite coal, mining engineers, and you have heard their testimony.   In substance it is that the production of culm is a necessary incident in the process of mining.   That is, their testimony in effect is, that in the mining and preparation of prepared sizes of coal you will necessarily produce culm; and the contention of the plaintiff is that that being so, that in the mining and preparation of prepared sizes this culm resulting, why, they say, it is a matter of no expense to the operator, to the defendant here, and that if he has had no expense in producing it therefore, when he sells it, it is all net profit or practically so.   The only item of expense which the plaintiff admits should be charged against the selling price of the culm, is as I have stated to you, that stated by Mr. Smith to the effect that it would cost to load the culm, after it is separated from the run of mine, about $\frac{8.7}{100}$ of a cent, or practically a cent a ton to load it, and the contention of the plaintiff is, that that is all the expense that attends the production of culm.

Now we think you understand from what we have stated, and from the testimony of the witnesses and the comments of counsel, this position fully.   If you are satisfied of the truth of that proposition, from the testimony in the case, then you will be justified in finding for the plaintiff the price received by the defendant in the sale of the culm, for all that he has thus sold, less $\frac{8.7}{100}$ of a cent per ton expense.   I think the plaintiff in his statement has not allowed that, but if you find that to be true you may make that allowance.

Now if you are not satisfied that plaintiff's contention is correct, if you are not satisfied of the proof of his contention in this respect, that culm is a necessary incident in the process of mining, but you believe the defendant's story that in the production of this culm it cost him, as he has stated to you, a certain part of a dollar to get it, I have forgotten the amount that he stated, I think the highest figure was some seventy or eighty cents, if you are satisfied from his explanation of the process of mining as it took place in this mine, that this culm cost him to get it to the surface some seventy or eighty cents a ton, then that cost should be a charge against the culm account and if he sold the culm for less than that amount, or less than it cost, there would be no net profit upon it. If you accept that theory, why, the plaintiff should not recover here for any net profit on culm; you should bear in mind all the time that it is net profit to which the plaintiff is entitled. Not gross profit, but net profit.

Now we leave this contention to you as a matter of fact. Which is the more reasonable? Which impresses you as being the true one? You will consider all the testimony and adopt that which you believe to be true and which you believe to be supported by reason and the evidence.] [1]

Defendant presented these points:

1. That under the terms of the lease the plaintiff is entitled to receive one-third of one-tenth of the net profit made by the defendant on culm sold by him. The amount of net profit is to be ascertained by deducting the cost of production from the price for which it was sold. If the jury believe under all the evidence in the case that the cost of mining and producing culm by the defendant equaled or exceeded the price for which it was sold there is nothing due the plaintiff on that account. *Answer:* This point, gentlemen, we do not affirm, because this also asks us to decide, in a measure, questions of fact. This point requests us to say to you that the net profit is to be ascertained by deducting the cost of production from the price for which it was sold. That might include the cost of mining the coal and taking it to the surface; as to that, you will recall, there are two contentions here: one by the plaintiff

that the mining of culm was a necessary incident to the process of mining run of mine coal and that theory we have explained to you. We have also explained to you the opposing theory of the defendant and therefore leave it to you as a question of fact. We cannot affirm this point, because it would be contradictory of our general charge. We do say to you now, in answer to this point, as we said in our general charge, that from the selling price of culm should be deducted the cost which attended the culm after it became culm, and the only evidence as to that in this case is the testimony of Mr. Smith, who stated that such expense was $\frac{8.7}{100}$ of a cent per ton. [2]

2. Under the evidence in this case the plaintiff is not entitled to recover interest on the deferred payment. *Answer:* This point is refused. [2]

Verdict and judgment for plaintiff for $4,327.46. Defendant appealed.

*Errors assigned* were (1–3) above instructions, and answers to points, quoting them.

*Rodney A. Mercur*, for appellant.—We allege that "culm" while in some respects is an "incident," it is more than an ordinary incident. In fact, while it is not one of the prepared sizes of coal, it does actually contain a certain percentage of a smaller size of coal of an inferior grade, but now marketable, and being used: Lance v. Lehigh, etc., Coal Co., 163 Pa. 84; Cole v. Ellwood Power Co., 216 Pa. 283; Coleman's Appeal, 62 Pa. 252; Ege v. Kille, 84 Pa. 333; Coal Co. v. Rogers, 108 Pa. 147; McGowan v. Bailey, 179 Pa. 470.

The idea of profits presupposes the payment of all necessary expenses of the business by which such profits are made: Penn v. Whitehead, 17 Grant (Va.), 503; Freeman v. Freeman, 142 Mass. 98 (7 N. E. Repr. 710); Rubber Co. v. Goodyear, 76 U. S. 788; Lepore v. Building & Loan Assn., 5 Pa. Superior Ct. 276; Hentz v. Penna. Co., 134 Pa. 343.

*E. J. Mullen*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 4, 1909:
On this appeal from a judgment recovered against him in an

action on a coal lease the appellant raises two questions, one as
to the right of the lessor to recover interest on deferred pay-
ments of royalties, and the other as to the profits realized by
him on culm sold. The lease was executed March 23, 1898, and
the parts of it relating to these two questions are as follows:
"First: The lessee will pay to said lessors in monthly install-
ments for so much coal as they may mine during the year 1898
at the rates hereinafter named: $3,000.00 for the balance of
1898; $6,000.00 for the year 1899; $6,000.00 for each and every
year thereafter until all the coal is exhausted, or this lease is
determined, in monthly installments payable on the 15th day of
each month for the proportion of mine rent due for the preced-
ing month. And in consideration of the payment of said mine
rent the said lessee shall be entitled to mine and move each
year from the demised premises so many tons of coal of 2,240 lbs.
each as multiplied by twenty-five cents per ton will be the
equivalent of mine rent for such year; and for all coal mined
in any year in excess hereof the said lessee shall pay at the rate
of twenty-five cents per ton of 2,240 lbs. each in monthly in-
stallments as aforesaid.

"These prices are for all coal that will pass over a screen of an
eighth of an inch mesh and all that will pass through is to be
classified as culm, and for said culm that is sold the said lessee
is to pay the lessors one-tenth of the net profit of said culm.

"The lessors at their option shall be entitled by their agents
to supervise the weighing of all coal mined or shipped under
this lease and at their option to have a check weighman at
their expense, no charge to be made for coal consumed under
the boilers or in carrying on the mining operations on said
premises.

"Second: If by any reason of a strike among the employees
of the lessee or among the employees of carrying companies, or
for any cause over which the lessee has no control continuing
for a longer period than one month, the said lessee shall be
prevented in any year from mining the quantity of coal for
such year measured by the mine rent, the lessee shall be bound
to mine and remove only so much coal during such year as by
the use of due diligence they may be able to mine and remove

and the mine rent for that year shall be abated proportionately, provided, however, that the said lessee shall in any event pay three months rent and the release of rent shall only relate to so much of the period of any strike as extends beyond one month."

On the trial the appellant claimed that, as he was prevented from prosecuting the work of mining for a certain length of time by causes over which he had no control, he ought not to be compelled to pay interest on the deferred payments. The jury were instructed that the defense as to interest on the deferred payments must be based upon cause or causes for delay over which the defendant had no control, and this was submitted to them as a question of fact. This is not assigned as error, but the complaint is that the jury were not instructed that, as the only testimony offered on this branch of the case was that of the defendant, if they believed him, there should be an abatement allowed on all interest over and above the three months' rent in each year, as provided in the lease. This instruction was not asked for, and in making complaint that it was not given the fact is overlooked that the jury had before them the testimony of the appellant on a former trial, when he testified that the only cause for his delay was "lack of funds" and that there was "no other material reason for it." The court, therefore, correctly instructed the jury that, if he had been delayed by reason of lack of money in the prosecution of his work, it was no defense.

There is no dispute as to the quantity of culm sold by the appellant. The dispute between the parties is as to what is to be taken into consideration in determining what were the net profits realized, if any, by the lessee from the sale of it within the meaning of the clause which required him to pay one-tenth thereof to the lessors. His contention is that the entire cost of mining and marketing the coal and culm is to be taken into account, and the average cost per ton for mining and marketing the entire output, the run of mine coal, which included culm, bone rock, slate and other impurities, is the cost per ton for the culm in ascertaining whether he has realized any profit from the sale of it. The culm was sold for less than the cost of mining and marketing it on this basis, and the lessee, therefore, con-

tends lessors are entitled to nothing for what was sold. The contention of the appellee, on the other hand, is that culm is a mere incident to the mining and preparation of the royalty coal for the market; that the coal in place does not contain culm; that it is created by the blasting of the coal in the mines, by the friction in handling and conveying the same to the breaker and by the preparation of coal for market in the breaker; that it is impossible, with the methods now in use in mining anthracite coal and the methods as actually used by the lessee, to mine and prepare royalty coal for the market without producing culm; that the same can be separated from the royalty coal by the screen and the breaker just before the one is loaded in the car; that the culm so separated in the breaker could be either loaded in the cars and sold or conveyed to the bank and thrown away; that nothing should be charged for producing the culm up to the time it is separated from the royalty coal, because it had to be brought out of the mine in order to mine and handle royalty coal for the market; that the cost of handling the cars of culm when sold was less than putting it on the refuse bank and throwing it away, and, therefore, the amount received for the culm was net profit, as it had cost nothing to produce it. Under the testimony produced by the plaintiff the question of what was the profit on the culm became a question of fact for the jury and was so submitted to them. Two mining engineers called by the appellee testified that they had been at the mines frequently during the progress of the appellant's mining operation and were familiar with his methods of mining and preparing the coal for market. They further testified that the production of the culm had cost him nothing in addition to the cost of mining and preparing the royalty coal for market up to the time it was separated from the royalty coal in the breaker, and that after such separation it cost less to sell and load it on cars than to put it on the refuse bank; that it was impossible for the defendant to mine and prepare the royalty coal for market without producing culm, and that when the culm was sold by the defendant the entire amount received for the same was net profit, as it had cost him nothing to produce it. The testimony of one of the witnesses was as follows: "Q. Did it cost Mr.

Gunton anything additional to bring this culm out of the mine? A. No, sir. Q. Anything additional to the cost of the other coal? A. No, sir. Q. Why not? A. Because that is purely an incident to mining and is never separated, and the price per car, the price that is paid the miner per car, is based on the amount of prepared sizes that that car will produce on an average." The appellant himself testified as follows: "Q. Doesn't it cost you just as much to mine royalty coal and prepare it for shipment, whether you sell the culm or whether you do not sell it; in other words, would it not be necessary to do all the work and incur all the expense in the mining and preparation of royalty coal for market, whether the culm is sold or not? A. Oh, the same operation would be necessary, certainly. Q. And the same cost would be, too, whether you sold the culm or put it on the bank, it would cost just the same, wouldn't it? A. The dirt, and if there was any merchantable coal in the culm it would cost just the same, of course. Q. If there was no merchantable coal in the culm, and if you put the culm on the bank and didn't sell it at all, your cost of mining the other coal would be just the same as though you sold that culm, wouldn't it? A. Practically, yes, sir." Whether the theory or contention of the appellee was correct was clearly a question for the jury, and they were properly instructed that if they found it to be correct, they should find in his favor for the price received by the defendant for the culm, less $\frac{8.7}{100}$ cents per ton expense incurred in loading it, but that, if they believed the defendant's theory or contention to be correct, there was no profit to be accounted for by him.

The assignments of error are all overruled and the appeal is dismissed.