# Hodgdon *v.* Lehigh & Wilkes-Barre Coal Company, Appellant.

*Mines and mining—Coal lease—Construction—Deficiencies in yearly output—Royalties—Rental for surface occupied—Statute of limitations.*

1. Where a coal lease provides for the payment of a flat rental for a stipulated number of tons of coal to be mined in any one year, and for making up deficiencies in the number of tons mined in any one year, within six years after such deficiencies occur a construction of the terms of the lease which would ignore the limitation of six years, during which such deficiencies may be made up, is not to be adopted if the language used can fairly be given another construction.

2. A coal lease which grants the right to mine 80,000 tons of coal annually at a rental of $20,000, payable quarterly and which provides that "If......lessee......shall pay said.....;rent in any one year......and during that year less than 80,000 tons of coal be mined and removed, the said (lessee) may in any subsequent year within six years thereafter, during the continuance of this lease, mine and remove sufficient coal to make up the deficiency" discloses the intention of the parties that in each year subsequent to a year in which less than 80,000 tons have been mined, 80,000 tons must first be mined, before any excess of tons mined during such subsequent year can be applied to making up the deficiencies.

3. A provision in such lease that the lessee will "pay at the time of payment of the quarterly installments at the rate of twenty-five cents per ton for all coal mined during the three months preceding the time fixed for such payment over and above 20,000 tons" requires that the interest on royalties due for coal mined in excess of the 20,000 tons and not applied to making up past deficiencies be computed from the end of each quarter when such royalties fell due.

4. Where such lease provided that the lessee should "pay an annual rental of $10.00 per acre for all surface occupied and used in the mining operation on the said premises" and after describing the demised premises, granted "so much of the surface of the said lands around and adjacent to the present shaft and breaker upon the premises as may be necessary for the deposit of dirt and the conduct of their mining operations,......not, however, exceeding sixteen acres of such surface," the fact that the lessor for many years acquiesced in the occupation of twenty-three and one-half acres of the surface by the lessee without demanding any rental therefor was not a construction of the lease by the parties which would prevent the lessor from successfully demanding rental for the sixteen acres referred to in the lease, and for use and occupation of the seven and one-half acres occupied in addition to the sixteen acres demised, a sum per acre equal to the per acre rental stipulated for the sixteen acres.

5. Where the successors in title of the lessor of such lease brought suit in equity for an accounting for royalties due on coal which had been mined in excess of 80,000 tons per annum and which was not needed to make up deficiencies in the tonnage mined in previous years, for interest on such royalties, and for the rentals of the surface occupied, the court properly allowed recovery for such royalties with interest thereon computed from the quarterly periods when such royalties fell due, and rentals for the sixteen acres occupied and made no error in allowing recovery for the use and occupation of seven and one-half acres on the surface during

a period more than six years before the suit was brought, the statute of limitations not having been pleaded as a defense.

Argued April 16, 1914. Appeal, No. 114, Jan. T., 1914, by defendant, from decree of C. P. Luzerne Co., Dec. T., 1897, No. 5, in equity, in the case of Sarah A. D. Hodgdon, Clarence P. Kidder, S. Louise D. Davis, Charles E. Dana, A. H. VanHorn, Joseph Birkbeck, Mary G. Lewis and Henry Metcalf v. The Lehigh and Wilkes-Barre Coal Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an accounting. Before FULLER, J.

The trial of the case was referred to Joseph D. Coons, Esq., as referee, who filed a report, certain exceptions to which were subsequently sustained by the lower court. The court entered a decree directing the defendant to pay the plaintiffs the sum of $164,819.08. Defendant appealed.

*Errors assigned* were in sustaining certain exceptions to report of referee and the decree of the court.

*Abraham M. Beitler,* with him *Edward Hopkinson, Jr., Arthur Hillman* and *Andrew H. McClintock,* for appellant.—The lessee had, as a return for $20,000, paid in any year, the right to remove within six years from the end of the year 80,000 tons of coal and so on during the life of the lease, any coal not removed within six years after the time it was paid for prior to the termination of the lease to be forfeited to the lessors: Hollister v. Davis, 54 Pa. 508; Pardee v. Markle, 111 Pa. 548; Reed v. Ward, 22 Pa. 144; Powell v. Burroughs, 54 Pa. 329.

If it should be held that only excess coal over 80,000 tons at the end of the year can be applied to make up prior deficiencies, then consistently interest on royalty due for excess coal, should only be calculated from the

end of the year, for until that time it would not be possible to ascertain the debt due. As to the claim for surface rental, the parties have construed their own contract by the lessors collecting their rent at the company's office for a long period of years without mentioning the subject of compensation for use and occupation, and finally by asking compensation for the use and occupation of upwards of six acres: McKeever v. Westmoreland Coal Co., 219 Pa. 234; Lehigh Coal & Navigation Co. v. Harlan, 27 Pa. 429; Colder v. Weaver, 7 Watts 466.

*Alexander Farnham,* for appellees.

OPINION BY MR. JUSTICE POTTER, October 5, 1914:

In this case the plaintiffs filed a bill in equity, to secure an accounting for royalties, surface rentals, and interest upon each, which they claimed to be due, under the terms of a coal lease. The questions involved, turn upon the construction of certain provisions of the lease. On August 13, 1870, the lease was entered into, for the coal under 330 acres of land in Wilkes-Barre Township, Luzerne County, belonging to the lessors, and provision was made that the lessee should pay an annual rental of $20,000, in quarterly installments of $5,000 each, in consideration of which, the lessee should have the right to mine and remove from the leased premises 80,000 tons of coal. It was then further provided: "And if the said party of the second part (lessee) shall pay said twenty thousand dollars rent in any one year, as is hereinbefore provided, and during that year less than eighty thousand tons of coal, of the pounds aforesaid, be mined and removed, the said party of the second part may, in any subsequent year within six (6) years thereafter, during the continuance of this lease, mine and remove sufficient coal to make up the deficiency. And the said Wilkes-Barre Coal and Iron Company, for herself, her successors and assigns, further agrees to pay at time of

payment of the quarterly installments above named, at the rate of twenty-five (25) cents per ton of the pounds aforesaid, for all coal mined during the three months preceding the time above fixed for payment over and above twenty thousand (20,000) tons."

The first question to be determined under the above clauses of the lease is stated by appellant as follows: "Under the lease can lessee apply all coal mined in any year to making up deficiencies in any prior year within six (6) years, or can lessee only so apply excess above 80,000 tons mined in any year?"

After the bill and answer were filed, the case was by agreement, sent to a referee. In his report, the referee held that all coal mined in any year might be first applied to making up previous deficiencies; but the court below took the opposite view, and held that only the excess over 80,000 tons mined could be so applied.

The second question to be determined is thus stated by appellant. "Is the interest on royalties due for coal mined in excess of the 80,000 tons (and not applied to making up past deficiencies) to be computed from the end of each quarter, or from the end of the year?" The court below again reversing the referee, computed the interest from the end of each quarter.

The third question to be determined arises under the following clause of the lease. "It is further agreed and covenanted that the said party of the second part, her successors and assigns, shall pay an annual rental of Ten (10) Dollars per acre for all surface occupied and used in the mining operations on said premises, payable on the first day of January in each year during the continuance of this lease." The lease also contained, immediately after the description of the premises leased, the following clause: "Together with so much of the surface of the said lands around and adjacent to the present shaft and breaker upon the premises as may be necessary for the deposit of dirt and the conduct of their mining operations by the party of the second part, not how-

ever exceeding sixteen (16) acres of such surface. The surface so occupied to be in a compact body immediately surrounding and adjacent to the said shaft and breaker, so as to occasion the least damage to and interference with the parties of the first part and their use and enjoyment of the soil and surface of said lands." Defendant occupied in all twenty-three and one-half acres of the surface in its mining operations, and made no payment of rent whatever for its use. Appellant states the question arising in this respect, as follows: "Does the lease require a rent of $10 per acre to be paid for surface occupied not exceeding sixteen acres? Are the lessors now barred from recovering rental, if required under the lease, or interest thereon?" The referee charged defendant only for rent of the surface used in excess of sixteen acres, but the court below reversed this ruling also, and held that defendant was required under the terms of the lease, to pay rent for the entire surface acreage which it occupied, at the price named in the lease.

The principal question is the one first above stated. Can the lessee, in case of a deficiency in the amount of coal mined during any one year, make up that deficiency immediately upon the close of the year, or must it first proceed to mine and remove 80,000 tons of coal to which the payment of the second year's rental will entitle it, before it can apply any coal mined in that year to a prior deficiency. We know of no case in which a similar provision in a mining lease has been construed. In Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387; Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118; Penna. Coal & Coke Co. v. Whiterow, 215 Pa. 327, and Woodruff v. Gunton, 222 Pa. 376, cited by appellees, there was no limitation of the right to make up deficiencies to six years, or any other period. The leases in the first three cases allowed deficiencies to be made up at any time before the expiration of the terms of the leases, and therefore created an entirely different situation. In the

decision of the case of Coolbaugh v. Lehigh & Wilkes-
Barre Coal Co., 213 Pa. 28, relied upon by the referee
and appellant, no question was involved which required
the construction of the provisions of the lease which are
here in question. The point decided in that case, was
that the interest of one of the lessors in the coal which
was the subject of the lease, was such that it was bound
by the lien of a judgment entered against him, and might
be taken in execution and sold under such judgment.
There was no attempt there to construe the lease, with
respect to the questions raised by the present appeal.
They were not there argued or considered.

In the case now before us, the court below held that
the 80,000 tons must first be mined in any year, and that
only the excess of coal mined over that amount, could be
applied towards making up the deficiency. With this
construction we agree. The lease clearly recognizes an
output of 80,000 tons as the offset of the amount of the
rental to be paid in each current year. If that precise
amount had been mined during each year, the account
would have been evenly balanced. If more than that
amount was mined, in the year, the excess was to be
paid for, at twenty-five cents per ton. If less than that
amount was mined, a deficiency was created, which could
be made up within six years. Under the view adopted
by the court below, the whole tonnage mined, would cost
the lessee twenty-five cents per ton, provided the lessee
exercised in a reasonable way, the privilege it had, of
making up any deficiency, within six years after the end
of the year in which it occurred. If it neglected to do
so, the fault was entirely its own, and it cannot reason-
ably be heard to complain. If the construction of the
lease, for which counsel for appellant contend, should
be adopted, it would have the effect of practically nulli-
fying the six years limitation for which the parties con-
tracted. For instance if the lessees should mine only
60,000 tons of coal in one year, and 80,000 tons in each
of the next ten years, then under appellant's construc-

tion they could make up the continuing deficiency of
20,000 tons for the tenth year, though more than six
years had elapsed since it first occurred. This would be
to defeat the limitation entirely. But manifestly the
parties must have intended that effect should be given
to the limitation, when they inserted it in the lease. A
construction of the terms which would ignore it, is not
to be adopted if the language used can fairly be given
another construction. No good reason is apparent why
the coal which was to be taken out as the equivalent of
the rental, should be applied to making up a deficit. On
the other hand, after the so-called rental coal was taken
out, in any one year, it was a fair and reasonable con-
struction of the lease which gave to the lessee, the right
to apply all other coal mined, towards making up a de-
ficiency not at the time more than six years old. After
the deficiency was made up, any excess coal mined,
would of course have to be paid for, at the stipulated
price of twenty-five cents per ton.

We agree also with the view of the court below, that
interest should be computed on the royalties for excess
coal mined, from the end of each quarter, rather than
from the end of the year. The lease provided that such
royalties should be paid "at the time of payment of the
quarterly installments above named," which were "pay-
able on the first day of January, April, July and October
in each year." Indebtedness for the royalties therefore
became due and payable at the end of the quarter, and
as a matter of course the interest on the debt began to
run from that time.

The lessee had the right to occupy the surface of the
ground adjacent to the shaft and breaker, not exceeding
sixteen acres. As a matter of fact it occupied twenty-
three and one-half acres. The lease sets forth: "It is
further agreed and covenanted that the said party of the
second part, her successors and assigns, shall pay an an-
nual rental of Ten (10) Dollars per acre for all surface
occupied and used in the mining operations on said

premises, payable on the first day of January of each year during the continuance of this lease." The referee held that the lessee was not liable for the sixteen acres which it was permitted to occupy, but the court below construed the lease as requiring the payment of rent at the stipulated rate for all the surface occupied. In this particular we think the court below was also right. The covenant is to pay the rental for all surface occupied and used. This certainly included the sixteen acres. It was not contemplated that more than this amount of surface should be used. There was no letting, or rental of any more of the surface than this. If the lessee occupied more than was demised, it is liable for the use and occupation of such ground, but such compensation could not strictly be considered as "rental." An agreement might have been made that the lease should cover additional surface ground which might be required, but there is no evidence of any such agreement. Indeed it does not appear that the lessors knew that the lessee was occupying more than sixteen acres of surface land, until a survey was made for the purposes of the present suit. Possibly the bar of the statute of limitations might have been invoked as to part of the claim for use and occupation of the extra seven and one-half acres of land, not included in the lease, but the statute has not been pleaded. We do not see any basis upon which to found any presumption of payment, as to any part of the rent claim for surface land, for it is admitted that nothing has been paid upon that account.

It is suggested in the argument of counsel for appellant that no demand was made for rental for surface land, during the operation of the lease, prior to the filing of the bill, and that this amounted to a construction of the contract in this respect, by the parties themselves, which should not be disturbed by the court. But as to this, the trial judge well says: "On this subject, there is not the slightest ambiguity in the written contract, which is susceptible of only one interpretation, and there-

fore the doctrine of external construction by conduct of the parties does not apply to the case at all." The case of Hillside Coal & Iron Company v. Coal Company, 239 Pa. 359, is also in point. It was there held, as set forth in the syllabus, that the failure of a lessor to claim excess royalties for a series of years, "did not justify the conclusion of a contemporaneous interpretation by the parties, that no such excess was due to the lessor." Counsel for appellant have also commented upon the fact, that in their bill, plaintiffs have merely alleged that defendant has occupied and used, upwards of six acres of land, on said leased premises. This statement was however sufficiently elastic to permit of its expansion to an extent sufficient to cover the amount subsequently ascertained by an actual survey, to have been occupied. Twenty-three and a half acres is certainly upwards of six acres, and the prayer of the bill is for an account "for all surface land" which has been occupied and used by the defendant.

Of the seventeen assignments of error, some are to the interlocutory decree, and some to the final decree, and the remainder are to the action of the court in sustaining plaintiffs exceptions to the report of the referee. They raise however, only the three questions which we have considered.

The assignments are all overruled, the decree of court below is affirmed, and this appeal is dismissed at the cost of appellant.