## Lehigh Valley Coal Company *v.* Everhart, Appellant.

*Mines and mining—Lease—Royalties.*

A mining lease gave to the lessee the right to mine all the merchantable coal to exhaustion, accompanied with certain surface and timber privileges on the lessor's land. No fixed term was specified. One clause of the lease provided for the payment of thirty cents per ton for the coal mined and removed. By a subsequent clause the same rate per ton was fixed, but the lessee agreed to pay during the remainder of the term " a fixed

minimum cash royalty annually of thirty thousand dollars in quarterly installments, and for such payment may mine and remove in each and every year as aforesaid one hundred thousand tons of coal." *Held*, that the lessee was bound to continue the payment of the stipulated minimum royalty as long as any coal remained unmined, although he may have paid an amount in excess of thirty cents per ton for all the coal under the land both mined and unmined. In such a case the lessee's loss was caused by his own delay. Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387, followed.

*Equity—Equity practice—Findings of fact and conclusions of law.*

Where counsel present requests for findings of fact and for conclusions of law, the judge is bound to answer each by adopting, affirming, qualifying or denying it. It is not sufficient that such requests may be substantially answered by the judge's own independent findings, if he does not indicate in connection with each request itself what he regards as his answer, to be found in his own independent findings.

MR. JUSTICE POTTER dissents.

Argued March 25, 1903. Appeal, No. 328, Jan. T., 1902, by defendants, from decree of C. P. No. 4, Phila. Co., Dec. T., 1901, No. 2684, on bill in equity in case of Lehigh Valley Coal Company v. George W. Everhart. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for an injunction.
The opinion of the Supreme Court states the case.

*Error assigned* was in not dismissing the bill.

*George R. Bedford* and *Richard C. Dale*, with them *Henry A. Fuller*, for appellants.—The plaintiff is expressly obligated to pay the minimum until all the merchantable coal shall be mined out and exhausted : Wright v. Warrior Run Coal Co., 182 Pa. 514; Axford v. Thomas, 160 Pa. 8.

The contract is properly construed as a lease and not as a sale : Denniston v. Haddock, 200 Pa. 426.

The contract, however, construed as a sale, leads to the same conclusion : Woodward v. D., L. & W. R. R. Co., 121 Pa. 344; Timlin v. Brown, 158 Pa. 606; Lehigh, etc., Coal Co. v. Wright, 177 Pa. 387.

*John G. Johnson* and *S. P. Wolverton*, with them *Francis I. Gowen*, for appellee, cited: Boyer v. Fulmer, 176 Pa. 282;

Sanderson v. Scranton, 105 Pa. 469; Del. & Hudson Canal Co. v. Hughes, 183 Pa. 66; Lillibridge v. Lackawanna Coal Co., 143 Pa. 293.

OPINION BY MR. JUSTICE MESTREZAT, May 11, 1903:

By a contract in writing, dated January 1, 1884, the plaintiff and defendants' predecessor in title, each being the owner of the undivided one half of the premises, for the consideration of the rents therein named and the covenants to be performed by the lessee, "demised, leased and to mine let" to one Frederick Mercur "all the anthracite coal" in and under a certain tract of land lying in Luzerne and Lackawanna counties, together with the use of such portion of the surface as might be required for mining improvements necessary for the development of the mining operation; and also with the right to cut and use timber on lessors' land for mining purposes during the term of the lease. The contract provided that the lessee should "have and hold the said coal and mining privileges with the surface rights . . . . until all the merchantable coal which can be mined and removed by proper, skilful and workmanlike mining shall be mined out and exhausted."

The lessee covenanted, inter alia, as follows: That he would forthwith enter into possession of the demised premises and proceed with due diligence to mine and remove all the merchantable coal; that he would pay quarterly a royalty of thirty cents per ton for each ton of coal mined and shipped which should pass over a screen of five eighths inch square mesh, and for all coal which should pass through a screen of five eighths inch square mesh, a royalty proportioned to the prices of the larger sizes; that after the first year, he would pay "a fixed minimum cash royalty annually of thirty thousand dollars in quarterly instalments as aforesaid and for such payment may mine and remove in each and every year as aforesaid one hundred thousand tons of coal of the sizes larger than pea coal . . . . And if in any one year the stipulated minimum cash royalty shall be paid and sufficient coal at the royalty aforesaid to equal such minimum shall not have been mined out and removed, the deficit may be mined out and removed, without charge, in any subse-

quent year of the term." The contract provided that the payment of the royalty should be suspended if the machinery should be broken or injured and for certain other enumerated causes. The ninth paragraph is, inter alia, as follows: " That if at any time any installment of rent or any part thereof shall remain unpaid for the period of sixty days . . . . the said lessors may at their option declare this lease at an end, and thereupon all rights of the said lessee under this instrument shall absolutely cease and determine . . . . and in case a cause of forfeiture shall arise . . . . and shall . . . . be waived, the right of forfeiture shall remain and be in force whenever and so often as a new cause of forfeiture by reasons of nonpayment of rent or otherwise shall arise." It was further stipulated in the same paragraph that " to the end that a speedy process may be had for the recovery and the resumption of the possession of the demised premises after forfeiture declared," the lessors might, by a power of attorney therein given, enter judgment in any action of ejectment brought to recover the premises upon which judgment a writ of habere facias possessionem might issue forthwith and the premises with all the improvements thereon be delivered at once to the lessors.

For a nominal consideration, Mercur, the lessee, on March 29, 1884, sold and assigned all his interest in the lease to the Lehigh Valley Coal Company, the plaintiff in this suit. No mining operations were begun on the property until November, 1890, but in the meantime, the coal company paid the stipulated annual royalties.

This bill was filed January 16, 1902, and it avers, inter alia, that up to October 1, 1901, the plaintiff had paid to defendants the full amount of the royalties due them under the terms of the contract for all the coal in and under the land described therein, and that they were not entitled to any further payments or royalties under or by virtue of the terms of the agreement. The bill prayed that it be decreed that the plaintiff has paid the full amount of royalty that it is required to pay by virtue of the lease and is entitled to possession of the demised premises without further payments until it shall have mined and removed the remainder of the coal in and under the premises. A further prayer of the bill was that defendants be enjoined " from declaring the terms of the said mining lease at an end and from

resuming possession summarily of the said premises," and from interfering with plaintiff's possession thereof until it shall have mined and removed the remainder of the coal in and under the demised premises. The answer denied that the coal remaining in the land had been paid for and also denied that the plaintiff had observed its covenants, and averred a breach of the same in that it had not paid the minimum amount of royalties payable on January 20, 1902.

The learned trial judge found that the payments made to the defendants up to October 1, 1901, were in excess of the value of their share of the coal mined and removed according to the method of valuation provided by the lease, and was, by the same method of calculation, also in excess of the sum due the defendants for the coal mined and yet to be mined on the premises. He held " that the plaintiff is entitled to mine and remove, within a reasonable time, the unmined portion of the moiety of the coal demised in the indenture mentioned in the bill, for which it has made payment, without the payment of any further royalty, minimum or consideration therefor," and enjoined the defendants "during said reasonable time" from declaring " the term of the said indenture at an end," and from resuming possession of the coal or from interfering with the plaintiff company's possession of the same until it shall have mined and removed the coal.

The right of the plaintiff to the relief sought in the bill depends upon the construction of the contract made on January 1, 1884. The intention of the parties must be ascertained from their contract, and when thus ascertained, it must be carried out regardless of any supposed hardship that may result to either of the parties. When the terms of an instrument are plain and easy of interpretation, there is no necessity for invoking the aid of technical rules of construction to determine the intention of the parties. This frequently leads to the making of another and different contract by the court, and not to the enforcement of the contract of the parties which is the duty of that tribunal. Here, we are not concerned with what the parties should have done, what stipulation they should have inserted in their contract, but our sole duty is to compel them to observe and carry out what they did as evidenced by the instrument in writing which bears their signatures. If

either of the parties made a "hard and unconscionable bargain," it is his act, and in the absence of fraud, accident or mistake, he cannot invoke the aid of a court to relieve him from his folly. Such errors have not yet been recognized or regarded as being within the corrective powers of either the legal or chancery side of our courts of justice, and until the authority is conferred or declared to exist, we must decline to exercise it.

By the terms of this agreement, the lessee became entitled to all the merchantable coal within the described premises, together with the use of such portion of the lessors' surface as might be required for airshafts and other mining improvements, and also with the right to cut and use timber on the lessors' lands for mining purposes during the existence of the lease. The coal was not to remain in place, but was to be mined and removed with due diligence by the lessee. No definite time was fixed within which the coal was to be removed, but it was expressly provided that the lessee was to have and to hold the coal and mining privileges with the surface rights and timber privileges "until all the merchantable coal which can be mined and removed by proper, skilful and workmanlike mining shall be mined out and exhausted." This stipulation defined or fixed the term, though it was indefinite, in which the lessee should remove the coal and exercise the rights conferred on him by the contract. It is, therefore, clear that the intention of the parties as expressed in their contract was that all the coal was leased or granted to the lessee, but that he should proceed with due diligence to mine and remove it until it was "mined out and exhausted." Practically and in effect what the lessee got by the contract was the right to mine all the merchantable coal to exhaustion, accompanied with certain surface and timber privileges on the lessors' land.

The payment of thirty cents per ton for the coal mined and removed, as provided in the second paragraph of the lease, was not the only consideration or compensation for the rights and privileges granted or leased to the lessee. Had it been, the additional provision for the payment of royalty contained in the third paragraph would have been surplusage and entirely unnecessary. We must presume that the parties had some purpose in view when they inserted the minimum clause in the

agreement.   It must be read in connection with, and as part of, the provision for the payment of royalty in the second paragraph. By the terms of this paragraph, the lessee covenants to pay thirty cents per ton for each ton mined and shipped; by the third paragraph, the same rate per ton is fixed, but he agrees to pay during the remainder of the term "a fixed minimum cash royalty annually of thirty thousand dollars in quarterly installments, and for such payment may mine and remove in each and every year as aforesaid one hundred thousand tons of coal." The provisions of the two paragraphs do not conflict and both are operative and must be given effect. The rate of thirty cents named in the second paragraph was fixed in view of, and was controlled by, the fact that the lessee would "proceed and continue with due diligence to mine out and remove" the coal, thereby enabling the lessors to realize promptly upon it. The speedy mining of the coal and the consequent early receipt of the royalties or rentals therefor was doubtless an important consideration with the lessors in fixing the rate established in this paragraph of the lease. They realized, however, that under this clause of the contract they had no protection against delay in the mining operations and that there was no provision for compensating them for the loss they would sustain should the lessee fail to mine the coal promptly. The parties, therefore, fixed another rate or consideration for the coal predicated on the action of the lessee in delaying the payment of the rentals and thereby prolonging the use and control of the surface rights and timber privileges consequent thereon. Hence followed the third paragraph which is an absolute and positive covenant that the lessee shall pay to the lessors $30,000 annually during the remainder of the term. The term is fixed, and continues from the date the lessee begins the operation of mining, immediately after the execution of the agreement "until all the merchantable coal which can be mined and removed by proper, skilful and workmanlike mining shall be mined and exhausted." For the payment of the minimum cash royalty he may mine and remove 100,000 tons of coal. This is at the rate fixed in the second paragraph of the contract. He is also required to pay at the same rate per ton for any coal mined in excess of the amount he is permitted to mine in consideration of the quarterly minimum; and he may, at a like rate without charge,

make up in any subsequent year of the term the deficit in the amount mined in any preceding year.  If the lessee had mined and removed the coal with due diligence, thirty cents per ton would have been the full compensation he would have been required to pay for the rights and privileges granted him; as in that event, he would have mined in excess of the minimum quantity in each year until the coal had been exhausted and the term had, thereby, ended.  But having failed to conduct his mining operations with the promptness required by the contract, the lessee subjected himself to the other or alternative mode of compensation provided in the third paragraph of the lease.

It is contended by the learned counsel for the appellee that by this contract a fee simple estate in the coal was conveyed to and vested in the lessee.  But if this be conceded, it does not follow that the consideration named in the agreement shall not be paid by him.  As we have attempted to show, the consideration was fixed by the parties and was not payable in a lump sum, but in annual installments of not less than $30,000 per year until the coal was mined out and exhausted.  This is the positive stipulation of the contract and is not affected by the title or interest which the lessee takes to or in the coal.

The appellee urges that if it is compelled to continue the payment of the stipulated minimum royalty, it will be in direct opposition to the provision of the lease that the deficit may be mined out and removed " without charge."  This is clearly erroneous and is not supported by the terms of the lease.  The third paragraph, wherein this clause occurs, provides that if in any one year there shall not be sufficient coal mined to equal the minimum royalty, " the deficit may be mined out and removed, without charge, in any subsequent year of the term." The appellee, therefore, is not entitled to the benefit of this provision of the lease to make up a deficit " without charge " unless it mines the coal during the continuance of the term. This it can do by complying with the terms of the contract and thus preventing a forfeiture of the lease.

The appellee also insists that the lessors' construction of the lease will do it great injustice and require it to pay far in excess of the royalties reserved in the lease.  In reply to this proposition it may be said that the parties must abide by the

contract they made whatever it may be, and that if the rent or royalty paid by the lessee is in excess of thirty cents per ton, it is solely the fault of the lessee and is strictly within the terms of the agreement. If the coal had been promptly mined and the lessors had been paid the rent promptly as required by the contract, they could have used the proceeds of the coal advantageously and thus realized on what they were entitled to have under the second paragraph of their agreement. Not only has the delay in mining the coal been detrimental to the interests of the lessors, but to permit the lessee to continue in possession of the demised premises without payment of the minimum royalty during the term, would allow it to use the surface rights and timber privileges granted in the lease without any compensation whatever. This was not contemplated by the parties under any reasonable interpretation which may be given the contract.

The prayer of the bill recognized the fact that the contract defines the term in which the coal is to be mined and removed and that the term is still in existence. It asks the court to enjoin the defendants " from declaring the term of the said mining lease at an end." The decree itself gives to the agreement a like construction by enjoining the defendants " from declaring the term of the said indenture at an end." If the term is still in existence, the lessors have a right to the payment of the minimum cash royalty, as by the third paragraph of the lease the royalty was to be paid "for the remainder of the term." The failure to pay it would result in a forfeiture of the lease, and that is the only way in which the term could be terminated, save by the exhaustion of the coal. The decree, therefore, upon its face is bad and is in direct contravention of the express terms of the contract made by the parties. It is further violative of the contract in that it permits and authorizes the lessee to mine and remove the unmined portion of the coal " within a reasonable time " without the payment of the stipulated annual royalties. The provisions of the contract not only forbid this, but make such action on the part of the lessee a cause of forfeiture. The effect of the decree, therefore, is to set aside the lease and replace it with an agreement whose terms are in direct opposition to it.

We are clearly of opinion that the case at bar cannot be dis-

tinguished from that of the Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387. The covenants and stipulations in the contracts in the two cases, while differing in phraseology, are in effect the same. " Royalty " and " rent " are used interchangeably in both contracts. In the contract in each case, a fixed sum is to be paid annually in quarterly installments. In this case, it was covenanted that the lessee " for the remainder of the term will pay a fixed minimum cash royalty annually." In the Wright case, it is provided that the lessee " whether coal be mined or not shall pay . . . . an annual minimum rental." The phraseology of the two contracts is different, but the language employed in both cases requires the lessee to pay annually a fixed royalty or rental, in default of which the lease may at the option of the lessor be forfeited. This is the only fair and reasonable interpretation of which the language in the two contracts is susceptible.

The learned trial judge misconstrued rule 62 of the equity rules adopted by this court as to his duty in answering the requests for findings of fact and conclusions of law. The judge, sitting as a chancellor, " may adopt or affirm these requests, or any of them, or state his findings of fact or of law in his own language," but this language of the rule applies to each request, and it is the duty of the judge to make a separate and distinct answer to each request as directed by the rule. It is but fair to the trial judge to say that the opinion in this case was filed by him before the decision of Hoyt v. Kingston Coal Co., 203 Pa. 509, in which our Brother BROWN, speaking for the court, considers the rule in question and interprets it as suggested above.

We are of opinion that under a proper interpretation of the contract between the parties, the defendants have a right to insist on the payment of the fixed minimum royalty as provided in the lease, and that if the plaintiff fails to make such payment, the defendants may forfeit the contract.

The decree of the court below is reversed and it is now ordered, adjudged and decreed that the bill be dismissed at the cost of the plaintiff.

MR. JUSTICE POTTER, dissenting :

I dissent from this judgment for the reason that I regard the

contract as a sale of the coal in place, to be paid for by the ton, the stipulated annual payment being not as rental, but as so much of the purchase money for the coal. In no event can I see any justification for requiring payment for any more coal than is in existence upon the tract. The full amount of coal in the entire tract has already been paid for at the agreed rate.

The effect of this decision will be to compel the purchaser to pay twice for the same property. Such a result could never have been contemplated by the parties to the contract.