# Woodruff, Appellant, *v.* Gunton (No. 2).

*Mines and mining—Coal lease—Minimum royalty—Making up deficiencies in minimum royalty.*

Where a coal mining lease provides for the payment of a minimum royalty and the payment of a certain sum per ton for all coal mined in excess of the tonnage upon which the minimum royalty is based, and there is no provision in the lease that a deficiency in the minimum royalty for one year shall be made up in subsequent years from coal mined in excess of the tonnage on which the minimum royalty is based, the lessee cannot recoup himself for the deficiency in the minimum royalty which he has had to make good in one year by mining the deficiency in a subsequent year without paying therefor. The lease in such a case is an agreement to pay a fixed sum at a fixed time during a fixed period for the privilege of mining the coal on the land leased.

Argued March 17, 1908. Appeal, No. 338, Jan. T., 1907, by plaintiff, from judgment of C. P. Sullivan Co., May T., 1903, No. 68, on verdict for plaintiff in case of William L. Woodruff *v.* Walter B. Gunton. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Assumpsit to recover for a coal royalty. Before TERRY, P. J. The facts are stated in the opinion of the Supreme Court.

The trial judge charged in part as follows:

[There are three questions raised in this case; that is, on three propositions the parties do not agree, one is, whether the plaintiff is entitled to recover in this case his proportion, or the one-third of the minimum royalties for the years 1898 and 1899. The plaintiff claims that that minimum royalty was not paid in those years and that therefore he is entitled to recover his proportion.

The defendant claims that although he did not pay them in those years, yet he subsequently mined coal to the extent called for by the lease and in such quantity, and that the twenty-five cent royalty was calculated and paid on that, and that it was made up to the plaintiff in that way. Perhaps that is not an exact statement of it. The defendant contends,

rather that he was not to pay both the minimum royalty and the royalty of twenty-five cents per ton; and that when he subsequently mined all that the parties provided for and paid for it, he paid all that was contemplated by the parties to the lease. That, we say, is one question.

That will depend upon the construction of the lease, and therefore that question is one of law for the court. It becomes our duty to resolve that question, and your duty to accept the construction of the court upon that point.

From a construction of the whole lease we have come to the conclusion that the contention of the plaintiff in this case is unwarranted. We have resolved that legal question involved against the plaintiff, and in our opinion he cannot recover both the minimum royalty and the royalty of twenty-five cents per ton. Therefore we instruct you that the plaintiff cannot recover for the minimum royalties claimed by him to be due for the years 1898 and 1899, and that will relieve you from the consideration of that question.

If we are wrong in this construction, gentlemen, the plaintiff will have his remedy, and by appeal to a higher court can set us right and remedy the wrong, if it be a wrong, he is thereby done.]

[The next item is, amount due plaintiff October 15, 1902, on minimum royalties for 1898 and 1899, $3,000; less royalties charged on coal mined, $1,267.97; net amount due plaintiff, $1,732.03.

Gentlemen, under the view of the law as we understand it, and as we have already instructed you, you cannot allow this item to the plaintiff.] [2]

[Gentlemen of the jury, counsel for the plaintiff, of course, prepared his statement from his own view of the law, as he had a right to do, and in that statement, as I have stated to you, was included this item of $1,732.03. We have instructed you as a matter of law to exclude that item from the account. Counsel for plaintiff has now made a computation, which has been shown to us, of the interest on that $1,732 item, which, added to the item of $1,732.03, makes the amount of the item to be deducted from plaintiff's statement $2,212.52. That

you may verify, of course. These statements that are sent out with you are not binding upon you. They are furnished you as the respective contentions of the parties and as an aid to you in passing upon their contentions. You are at liberty to ,use them and, under the instructions of the court, to adopt the views set forth in these statements, as we have indicated, except that you cannot allow the plaintiff this $1,732.03 item nor any interest upon it.] [3]

Plaintiff presented this point:

1. The plaintiff, under the terms of the lease, is entitled to one-third of the minimum royalties provided for by same, for the years 1898 and 1899, less one-third of the royalty price of coal actually mined and removed during these years. The undisputed evidence shows that the defendant paid no minimum royalties for either of these years, and that he mined and removed $15,215\frac{65}{100}$ tons of coal that would pass over an eight-inch mesh during this period. *Answer:* This point is refused. [4]

Verdict and judgment for plaintiff for $4,327.46. Plaintiff appealed.

*Error assigned* were (1–6) above instructions, quoting them.

E. J. *Mullen*, for appellant.—Appellant contends that this question under the wording of this lease is ruled by the decisions of this court in the following cases: Lehigh and Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387; Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118; Pennsylvania Coal and Coke Co. v. Witherow, 215 Pa. 327.

*Rodney A. Mercur,* for appellee, cited: Kemble Iron Co. v. Scott, 15 W. N. C. 220; Denniston v. Haddock, 200 Pa. 426; McKeever v. Westmoreland Coal Co., 219 Pa. 234; Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28; Gallagher v. Hicks, 216 Pa. 243; Hollenback Coal Co. v. Lehigh & Wilkes-Barre Coal Co., 219 Pa. 124.

Opinion by Mr. Justice Brown, January 4, 1909:

This is an appeal by the plaintiff from the judgment from

which we have just decided the defendant had no ground of appeal. It raises the single question of the right of the appellant, as a lessor, to recover from the appellee minimum royalties for years in which he did not mine the minimum quantity of coal provided for in the lease, having, however, mined and paid for in subsequent years enough coal to make up the deficiency in the royalties for the prior years. The years for which the minimum royalties are claimed are 1898 and 1899. The trial judge was of opinion, from his "construction of the whole lease," that there could be no recovery for the minimum royalties for these years, and the jury so were instructed.

The lease is of a tract of land of 102 acres and 15 perches, for a period of ten years from March 23, 1898, with the privilege at the expiration of that period of renewing for another period of ten years. The consideration inducing the lessors to "demise, lease and to mine let" their land was the following covenant: "The lessee will pay to said lessors in monthly installments for so much coal as they may mine during the year 1898 at the rates hereinafter named—$3,000.00 for the balance of 1898; $6,000.00 for the year 1899; $6,000.00 for each and every year thereafter until all the coal is exhausted, or this lease is determined in monthly installments payable on the 15th day of each month for the proportion of mine rent due for the preceding month. And in consideration of the payment of said mine rent the said lessee shall be entitled to mine and move each year from the demised premises so many tons of coal of 2,240 lbs. each as multiplied by twenty-five cents per ton will be the equivalent of mine rent for such year; and for all coal mined in any year in excess hereof the said lessee shall pay at the rate of twenty-five cents per ton of 2,240 lbs. each in monthly installments as aforesaid." There is not another line in the lease upon the subject of how much the lessee is to pay, how or when he is to pay, how much coal he is to mine or when he is to mine it, and no other clause is, therefore, to be read in determining whether he must pay the minimum royalty provided for in the lease for 1898 and 1899, without regard to what he may have paid for excess coal mined in subsequent years. In construing the lease as

to this we are confined to the portion above quoted. Though the court below spoke of its construction of the whole lease, there is nothing to be found in the remainder of it relating to the question before us.

The lessee agreed unconditionally to pay in monthly installments, on the 15th of each month, $3,000 for the remaining portion of the year 1898, $6,000 for 1899 and the same sum for each succeeding year. This is an agreement to pay a fixed sum at a fixed time during a fixed period for a certain privilege. That privilege is to occupy the land of the lessors and mine and remove therefrom during each year of the fixed period a certain amount of coal—12,000 tons of 2,240 lbs. during the remaining portion of the year 1898 and 24,000 tons during each of the remaining years of the lease. For all coal mined in 1898 in excess of 12,000 tons, and for all mined in any subsequent year in excess of 24,000 tons, the lessee is to pay twenty-five cents per ton. Whether the privilege to mine a certain amount of coal, in consideration of the payment of an annual royalty or rent, is exercised or not, the covenant of the lessee is to pay a fixed sum for the privilege. If the amount of coal which the lessee is permitted to mine in each year is not mined, there is no stipulation for a proportionate abatement of the annual royalty, nor is a privilege given to him to recoup himself after having paid such royalty by mining the deficiency in a subsequent year without paying therefor. Such was the privilege in the leases under consideration in Lehigh and Wilkes-Barre Coal Company v. Wright, 177 Pa. 387; Lehigh Valley Coal Company v. Everhart, 206 Pa. 118; Pennsylvania Coal and Coke Company v. Witherow, 215 Pa. 327; but the express covenant of the present lessee is that for each year and in each year he will pay a fixed sum, and in addition thereto twenty-five cents for every ton of coal mined in excess of what he is permitted to mine in consideration of the payment of the fixed sum. The payment of the royalty or rental for each year is independent of the payment in any other year, and the mining of the coal each year is independent of the mining in any other year. With the intention of the parties thus clearly expressed, it is impossible to attribute a

different one to them and sustain the court below without reading into the lease a clause providing that the lessee may apply to the deficiency on the mine rent or royalty due for 1898 and 1899 the payments made in subsequent years for coal mined in excess of 24,000 tons. Counsel for appellee does not point to any clause in the lease sustaining his contention, but we are told that "this claim of the plaintiff is unconscionable." This is by no means to be conceded. The provision as to the payment of the annual royalty was inserted to insure to the lessors prompt mining by the lessee and prompt payment for his occupation and use of the land. If by his delay in mining he is allowed to appropriate to the payment of the royalty for 1898 the royalties paid for excessive mining five years thereafter, he is depriving the lessors of the use of their money for that length of time. This he may not do in the face of his express agreement to the contrary, and we may appropriately repeat what we said in Lehigh and Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387: "The owners' enjoyment of the value of their property would largely depend on receiving that value soon; if the payments, by reason of slow mining, were stretched into the future, they would receive far less than if made within a period of two, three or even five years, and all this coal could easily be mined within that time. Both parties assumed the value of the coal in place to be twenty-five cents per ton, and this value defendants would have proximately got if it had been mined diligently; but, if, on account of conditions of market, charges for transportation or price of labor, it paid plaintiff better to mine very slowly, defendants would not receive nearly that value. For example, take the $4,000 paid for the 16,000 tons mined the ninth year; if the 16,000 tons were worth twenty-five cents per ton at date of contract, then defendants had lost nine years' interest, or $2,160; deducting this from the $4,000, left only $1,840, equal only to eleven and one-half cents per ton by reason of the long deferred payment. The hardship of the bargain by the happening of this very contingency the owners sought to guard against by two distinct methods of fixing the purchasing price; one, twenty-five cents per ton, ·to be paid as mined;

and this is all plaintiff would have paid if it had mined with diligence; but there was another method; if for any reason, it chose to retain possession, and not mine diligently, then defendants had provided for this by exacting a fixed annual income of $4,000."

When the appellee declares the claim of the appellant to be unconscionable he forgets that it is based upon a contract entered into by himself in terms so clear that but one meaning can be given to them, and as he intelligently contracted, he is bound. If he made what he now regards as a hard bargain, he cannot, in the absence of fraud, accident or mistake in making it, ask to be relieved from it, and if he was foolish in making it, neither the legal nor chancery side of the court will shield him from the consequences of his folly: Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118.

The first assignment of error is sustained and the judgment reversed, with a venire facias de novo.