# Glenn, Appellant, *v.* J. C. Trees Oil Co. et al.

*Equity—Accounting—Sale of oil leases — Corporations — Evidence—Offer—Objection—Irrelevant or incompetent—Rebuttal—Fraud or deceit.*

1. On a bill in equity by a stockholder of a corporation against the company and three persons named as all its officers and directors and against the three persons individually, for an accounting of money received from the sale of a large number of oil leases alleged to be owned either by the company or held for its use by the individual defendants, the plaintiff claimed that the leases had been sold for $6,000,000 covering all the properties, but that the individual defendants had improperly and fraudulently retained for their own use $1,850,000. It was admitted that the purchase price of $6,000,000 was entire, but the individual defendants claimed that the $1,850,000 represented leases owned by them personally, and that plaintiff knew of this and consented to the sale as made. They offered no direct proof that plaintiff had agreed to any particular apportionment, but claimed that he knew all the circumstances and had acquiesced in the apportionment as made. The written contract of sale made no mention of any apportionment, but provided that all payments should be made to the company or its representatives. The evidence on the issue thus made was conflicting. *Held:*

(a) That any evidence was admissible, which, if true, would tend to prove an effort to deceive plaintiff in material matters relating to the sale, or which would reasonably go to show him entitled to an accounting, as to any part of the moneys claimed.

(b) That any evidence offered by the individual defendants tending to prove that any part of the proceeds of the sale belonged to them rather than to the corporation, might be rebutted by plaintiff.

(c) That, since the evidence on controlling points at issue was conflicting and the credibility of certain of defendants' witnesses on these points important, it was reversible error to refuse to admit in evidence "an office copy" of a certain return made by these witnesses to the United States government, showing the price of the company's property was $4,380,000, instead of $4,150,000 as claimed by defendants, where the offer was objected to as irrelevant and immaterial, and not as incompetent.

*Practice, Equity—Requests for findings of fact—Answers to requests—Immaterial—Appeal—Reversible error—Equity—Rules.*

2. Where requests for findings of fact are properly drawn, it is error to refuse them, merely because the chancellor classes them as

"immaterial." If the facts set forth are deemed immaterial, the chancellor can so state in his answer; and the question of materiality can then be decided on appeal, without the necessity of returning the record to the court below to find the facts if they be adjudged relevant.

3. Refusal or neglect to answer a properly drawn request for a finding of fact in an equity case, is reversible error.

Argued October 16, 1919. Appeal, No. 86, Oct. T., 1919, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1917, No. 2152, dismissing bill in equity in case of Coulter E. Glenn v. J. C. Trees, M. L. Benedum and H. S. Grayson, individually, and J. C. Trees, director and president of the J. C. Trees Oil Company, H. S. Grayson, director, general manager and treasurer of the J. C. Trees Oil Company, M. L. Benedum, director of the J. C. Trees Oil Company and the J. C. Trees Oil Company. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Bill in equity for an accounting. Before EVANS, J.

The averments of the bill and answer and the proofs are set forth in the opinion of the Supreme Court.

At the trial the following offer was made:

"Mr. Irwin: We offer in evidence Exhibit No. 5, which is an office copy of the return made to the United States Government in the year 1911 of the transactions of the J. C. Trees Oil Company in 1910, for the purpose of contradicting the defendants in stating that it was agreed to sell the property of the company for $4,150,000, the return showing a return of $4,380,000.

"Objected to by defense as irrelevant and immaterial.

"Objection sustained." (44)

Plaintiff made the following requests for findings of fact:

"21. On Dec. 1, 1910, the defendants had prepared an estimate of the amount of a dividend to be paid out to the stockholders of the J. C. Trees Oil Company, in

which dividend were to be included the moneys received by the sale under the Bedford contract."

Answer: "Refused, immaterial."   (4)

"22. In making up that estimate of the amount of the dividend, the Glenns were excluded from sharing in the dividend, but they were to be paid $400,000, which was much less than their one-eighth share in the dividend proposed."

Answer: "Refused, immaterial."   (5)

"29. The explanatory words now appearing on the voucher accompanying the check for $880,000 were not written on said voucher at the time the check was drawn but were added thereto subsequent to December 1, 1911."

Answer: "Refused. These are not findings of fact, but are arguments."   (7)

The court entered a decree dismissing the bill. Plaintiff appealed.

*Errors assigned,* among others, were (4, 5, 7) refusal of requests for findings of fact as above and (44) ruling on evidence quoting the bill of exceptions.

*E. C. Irwin,* with him *Watson & Freeman* and *John A. Metz,* for appellant.—The admitted facts, as found by the court below, require a reversal of this decree and the entry of a decree ordering an accounting by the individual defendants to the corporation of the whole of the Bedford consideration: Thompson's App., 126 Pa. 367; Zook v. Penna. R. R. Co., 206 Pa. 603; Luther v. Luther, 216 Pa. 9; Spangler Brewing Co. v. McHenry, 242 Pa. 522; Penna., etc., R. R. Co. v. P. & R. R. R. Co., 160 Pa. 277; Schaffhauser v. Arnholt & Schaefer Brewing Co., 218 Pa. 298; Sotter v. Coatesville Boiler Works, 257 Pa. 411.

The court below erred in rejecting much of the evidence offered to show defendants' fraud in relation to the Bedford sale; in rejecting practically all evidence offered to show later attempted concealment of that

fraud; and in repeatedly refusing to give any consideration to such evidence as was admitted of fraud and of acts of the individual defendants contrary to their oral testimony in the case: Luther v. Luther, 216 Pa. 1; Spangler Brewing Co. v. McHenry, 242 Pa. 522; Penna., etc., R. R. v. P. & R. R. R. Co., 160 Pa. 277; Schaffhauser v. Schaefer Brewing Co., 218 Pa. 298; Sotter v. Coatesville Boiler Works, 257 Pa. 411.

The court below erred in holding that the burden was upon the plaintiff to prove that the property conveyed under the Bedford contract and the consideration derived therefrom all belonged to the corporation: Bird Coal & Iron Co. v. Humes, 157 Pa. 278; Com. T. Ins. & Trust Co. v. Seltzer, 227 Pa. 410; Stone v. Marshall Oil Co., 208 Pa. 85.

There is no evidence whatever in the case to sustain the finding of the court below that the minority stockholders knew that the individual defendants owned, or claimed to own, the Texas leaseholds.

*John S. Weller*, with him *John O. Wicks, James P. Eagleson, George J. Wolf* and *S. H. Shannon*, for appellee.—The plaintiff's proof failed to support his bill of complaint: Summers v. Shryock, 46 Pa. Superior Ct. 231; Zook v. Penna. R. R. Co., 206 Pa. 603.

Under the pleadings and proof there was no burden on the defendants requiring them to submit any proof as to the fairness of the division of the purchase price: Luther v. Luther, 216 Pa. 1; Spangler Brewing Co. v. McHenry, 242 Pa. 522; Ferguson v. Yard, 164 Pa. 586.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1920:

Coulter E. Glenn, plaintiff, sued in equity the J. C. Trees Oil Company and the following persons, naming them as officers of that corporation and individually: J. C. Trees, director and president; H. S. Grayson,

director, general manager and treasurer, and M. L. Benedum, director; after hearing, the bill was dismissed, and this appeal followed.

The bill avers plaintiff and his brother, H. S. Glenn, together with the three individual defendants, constituted all the stockholders and board of directors of defendant corporation; that the company either owned, or there was held by the individual defendants for "the use and benefit of said company," oil and gas leases upon 114,000 acres of land in Louisiana and Texas; that in 1910 defendant company, represented chiefly by its president, sold its leases, wells and other assets to A. C. Bedford, representing the Standard Oil Company, for $6,-000,000, but the three individual defendants gave the corporation only $4,150,000 thereof, retaining and converting to their own use $1,850,000; which last mentioned amount plaintiff prayed be accounted for and paid back to the company.

The answer denies the J. C. Trees Oil Company either owned or had held for its use leases on 114,000 acres of land; it avers the corporation owned such leases on only about 14,000 acres, and that the three individual defendants possessed in their own right the balance of the leases referred to in the bill; that these leases adjoined the property of defendant company and were included in the Bedford sale with the knowledge and consent of plaintiff, and, furthermore, plaintiff was fully informed, at and before the conveyance, that the corporation was to receive only $4,150,000 for its property, the balance to go to the individual defendants in payment for their holdings.

When the case came to trial, it was conceded the purchase price of $6,000,000 was entire, covering all the properties included in the sale to Bedford, without, so far as the contract showed, any apportionment whatsoever. Plaintiff did not undertake to prove the Trees Oil Company either owned or had held for its use leases on the large acreage claimed by the individual defendants

as belonging to them, but assumed the position that the latter, "having sold the property of the corporation, together with the property which they now claim to have owned individually, as one property, for one undivided consideration, must show, by the clearest evidence, that the property they now claim to have owned did actually belong to them, and they must also show that they have retained no more of the consideration price than represents the fair value of the property privately owned by them."

When plaintiff rested, defendants made no motion to dismiss the bill for want of proofs, because,—as stated by their counsel, "owing to the fact that serious charges had been made in the bill of misconduct on the part of the individual defendants in converting to their own use property belonging to the corporation—they had decided to proceed to disprove any wrongdoing"; and, so far as we can judge from the printed record, defendants assumed the position, and undertook to prove that plaintiff was not only fully informed of the fact the oil company was to receive no more than $4,150,000 of the $6,-000,000 paid by Bedford, the balance to go to the individual defendants, but also that plaintiff impliedly agreed to such an apportionment.

There was, however, no effort on the part of defendants to show that plaintiff expressly agreed to any particular apportionment of the consideration money; the undertaking was to prove by circumstantial evidence that plaintiff was fully informed of all the facts and, by acquiescence, must be taken to have agreed to the apportionment as made. In this connection, the chancellor states: "It developed that, under an agreement between A. C. Bedford, on the one part, and the J. C. Trees Oil Company, J. C. Trees, M. L. Benedum, and H. S. Grayson, on the other part, the leases on the 114,000 acres of land, belonging to the J. C. Trees Oil Company and the three individuals, were sold as one property to A. C. Bedford for the sum of $6,000,000; and therefore we con-

sidered it incumbent upon defendants, they being the majority of the stockholders and the majority of the board of directors and the officers who had negotiated the contract with Bedford, to show that their dealing with this plaintiff was fair and open. Accordingly, we proceeded to take testimony on the question as to whether the plaintiff, C. E. Glenn, and his brother, H. S. Glenn, knew the facts concerning the ownership of the leases held by Trees, Benedum, and Grayson and of the terms of the contract with A. C. Bedford, before they joined with the other stockholders in ratifying the sale of the property of the J. C. Trees Oil Company to A. C. Bedford for $4,000,000 [evidently meaning $4,150,-000]. That is the important controverted question; and, as I view the law, it is the only serious question in this case. The Glenns both testified they did not know anything about the leases alleged to have been held by Grayson and subsequently joined in by Trees and Benedum; that they did not know the contract with A. C. Bedford purporting to convey the individual property of the three defendants; that they had asked for the terms of the contract, and the information had been refused; and that they had asked to see the contract and had been refused permission to see it. On the other hand, the defendants claim the Glenns knew all about the situation, that they were told the conditions of the contract, that the contract itself was lying on the table at the meeting of December 3d, and that Coulter E. Glenn, the plaintiff, picked it up and examined it. Of course, they could not say whether he had read it or not—nobody could say that."

While the written contract of sale names $6,000,000, as the consideration, yet, as before indicated, no mention of an apportionment of that sum, between the corporation and the individual defendants, is in any manner referred to therein, hence, as said by the court below, the case turned largely upon the credibility of witnesses, who gave conflicting testimony as to circumstances from

which the consent of plaintiff to the apportionment had to be determined. Of course, this made the credibility of these witnesses a matter of importance; nevertheless, when plaintiff offered in evidence, "an office copy" of a certain return made to the United States government, "for the purpose of contradicting the defendants' statement that it was agreed to sell the property of the company for $4,150,000, the return showing $4,380,000," this, upon objection, was refused.

The ruling in question (complained of in assignment of error 44) and others of a similar character, represent clear and material error. It is true the offer was of an office copy, and not the original return; but the objection thereto was simply that the evidence was irrelevant and immaterial, not that the proof offered was incompetent. If the objection had been placed on the latter ground, it may be plaintiff would have either secured the original or shown, as a matter of law, that the copy was sufficient. Under the circumstances, assignment 44 is sustained; and this ruling should be a sufficient guide in the next trial, without our discussing or passing directly upon other like specifications of error, further than to say that any competent evidence, which, if true, would tend to prove an effort to deceive plaintiff in relation to material matters pertaining to the sale in question or otherwise to sustain his allegations of fraudulent conduct on the part of defendants regarding such matters, or which would reasonably go to show him entitled to an accounting as to any part of the moneys claimed, should be admitted and passed upon by the chancellor in making his findings of fact; so also should all evidence be received and carefully weighed by the chancellor, before making such findings, which, if true, might materially affect the credibility of important witnesses.

Assignments 4 and 5 specify requests for findings of fact, which were refused, not because the facts set forth were incorrectly stated, but because the chancellor classed them as "immaterial." There are several other

instances of like kind. Such an answer to a properly drawn point is in violation of our equity rules; the correct practice is to either affirm or deny the request. If the facts set forth are deemed immaterial, the chancellor can so state in his answer (see Hoyt v. Kingston Coal Co., 203 Pa. 509, 511; Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118, 127; Reid v. Reid, 237 Pa. 171, 174-176); and the question of materiality can then be decided on appeal, without the necessity of returning the record to the court below to find the facts, if they be adjudged relevant. These assignments are sustained.

The request embodied in assignment 7, was refused on the ground that it is argumentative; we see no reason for so ruling. The assignment is sustained.

A properly drawn point or request for finding of fact, called attention to in assignment 11, is not answered at all, and an exception taken to this omission was dismissed; which is right in the teeth of our ruling in Lehigh Valley Coal Company v. Everhart, supra. The assignment is sustained.

Plaintiff participated in two meetings of the stockholders of defendant corporation, one in June and the other in December, 1910. The chancellor found originally that the price which the corporation was to receive for its holdings was fixed at the December meeting; subsequently, on consideration of exceptions, the court below stated this was a mistake—that it was at the meeting in June such price was "agreed to." Notwithstanding this change, the following appears upon the record: "Plaintiff was not informed prior to the meeting of December 3, 1910, that Bedford had agreed to pay $4,150,000 for the corporate property." The June meeting was held before the negotiations which led to the Bedford sale had even been entered upon, such sale taking place in November, 1910. Moreover, it appears from other findings that Bedford never agreed to pay any fixed amount for the "corporate" as distinguished from the other property included in his purchase. The facts concerning plaintiff's infor-

mation, or opportunity for information, as to the price which the corporation was to receive for its property, are of prime importance; hence changes and apparent discrepancies in the findings relating thereto are, to say the least, confusing. At the next trial care should be taken to have all the important relevant facts determined and the findings thereon entirely consistent with one another.

Since this case must go back for a new trial, if plaintiff desires to stand upon the position finally assumed at the former hearing—that the individual defendants, having commingled their own leases with those of the corporation, cannot retain more of the joint purchase price than "represents the fair value of the property privately owned by them"—he should consider seriously whether or not the averments in his bill ought not to be amended accordingly.

The contract of sale provides that the purchaser "is hereby authorized and directed to make all the payments of said purchase price to the J. C. Trees Oil Company or to such person as it may designate." This, unexplained, shows, prima facie (subject, of course, to proof to the contrary), that the consideration named in the contract belonged to the oil company; and evidence offered by the individual defendants tending to prove any part thereof belonged to them rather than the corporation, may be rebutted by plaintiff.

We do not intend by what we have said in this opinion either to suggest any views on the merits of the case or definitely to decide exactly the rules of law which must ultimately control its decision, for the record is not now in proper condition to that end; in other words, there is no way of foretelling what may develop when the case is returned to the court below. We have, however, endeavored to indicate our views on all essential points covered by the assignments.

The decree is reversed, the bill reinstated and a procedendo awarded.