## Wilkey v. Fayette Fuel Company.

*Sales — Executing contract of sale — Rescission by purchaser — Paying freight or demurrage.*

1. Where a purchaser of carloads of coal consigns them to a third party, to whom they are shipped by the seller, and the consignee refuses to accept the coal because of inferior quality, and so notifies the consignor, the original purchaser must either receive the coal and pay the contract price or notify the seller of his rejection of it. But to be effective, a notice for the rescission or termination of the contract must be clear and unambiguous, conveying an unquestionable purpose to insist on the rescission of the contract.

2. The consignor's right to reject the coal must be exercised not only promptly, but unequivocally. Mere complaint as to the quality of the coal, while exercising dominion over it inconsistent with ownership in the seller, is not sufficient.

3. The original purchaser is bound to accept the coal if up to the contract, but if not, he is under no obligation to sell it or attempt to sell it to other customers. If he refuses to accept the coal, but pays freight or demurrage on it, he cannot afterwards recover those expenditures from the seller.

*Evidence—Memorandum of parol contract—Admissibility.*

4. A memorandum relating to the terms of a parol contract made at the time by one of the parties negotiating the contract and read over to the other without dissent, or made by a third person under circumstances showing an assent thereto by the parties, although not in itself a valid written contract, may be competent as substantive evidence tending to establish, in connection with other evidence, the terms of the contract.

*Trial—Reference under Act of April 22, 1874, at close of evidence at jury trial.*

5. At the close of the evidence a case may be taken from the jury by agreement of the parties and decided by the court under the provisions of the Act of April 22, 1874, P. L. 109.

Action to recover contract price of carloads of coal withdrawn from the jury and submitted to the court. C. P. Fayette Co., June T., 1922, No. 750.

*Dean D. Sturgis* (of *Sturgis, Morrow & Sturgis*), for plaintiff.

*E. C. Higbee* (of *Sterling, Higbee & Matthews*) and *R. M. Carroll*, for defendant.

VAN SWEARINGEN, P. J., Nov. 27, 1923.—During the trial of this case was agreed orally between counsel and the court that at the conclusion of the evidence the case would be taken from the jury and decided by the court, under the provisions of the Act of April 22, 1874, P. L. 109, that the evidence offered would be used by the court with like effect as if taken by a judge sitting without a jury, reserving to each party the full benefit of all exceptions to the rulings made by the court when the testimony was taken, a written agreement to that effect between counsel was filed, and the case now is before the court on that agreement.

Wilkey *v.* Fayette Fuel Company.

Both parties to the suit have their offices in the Fayette Title and Trust Building, Uniontown. The plaintiff is an individual doing business as the Wilkey Coal and Coke Company, and the defendant is a corporation. The plaintiff is a shipper of coal, and the defendant is a brokerage company which, at times, purchases carloads of coal from the plaintiff and consigns and ships it to other concerns, and this action was brought by the plaintiff to recover from the defendant a balance alleged to be due from defendant for coal sold to it by plaintiff. As shown by the evidence, the practice between these parties was that when the brokers had orders or requests for coal they would call the shipper by telephone or see him personally and purchase certain cars of coal, with instructions from the brokers to forward the coal thus purchased to the consignees or appointees named by the brokers. The shipper billed the cars, which were loaded at the shipper's mines, to the consignees at the addresses given by the brokers to the shipper. Collections were made in regular course by the shipper from the brokers, who, in turn, collected in due course from the consignees.

The plaintiff in his statement claims for the price of 173 cars of coal sold to the defendant at prices therein shown, amounting in all to $82,885.91, and admits payments on account thereof aggregating $80,714.95, leaving a balance of $2170.96, alleged to be due plaintiff from defendant. At the trial plaintiff's claim for car CNJ 66540, of an alleged value of $327.90, having been included through error, was withdrawn, leaving a balance thus alleged to be due of $1843.06, to recover which the trial proceeded. It soon developed, however, that of the 173 cars of coal claimed for, 157 had been accepted and paid for in full, one had been withdrawn, and that the actual dispute was in regard to but fifteen cars. That is the theory on which the case was tried. The parties to whom the cars were consigned, the dates of consignment, all in the year 1920, the car initials and numbers, and the respective exhibits of the defendant relating thereto, were as follows:

| Sharon Steel Hoop Co. | | | | | Ore and Coal Exchange | | | | |
|---|---|---|---|---|---|---|---|---|---|
| July 30—Car NYC | 335103 | Deft's Ex. | 1 | | Nov. 16—Car B&O | 322589 | Deft's Ex. | 11 |
| " 30—Car BR&P | 41915 | " | " | 2 | " 16—Car P&LE | 50024 | " | " | 11 |
| " 30—Car GT | 73228 | " | " | 2 | Seaboard By-Product Co. | | | | |
| Youngstown Sheet and Tube Co. | | | | | Nov. 24—Car B&LE | 9856 | " | " | 7 |
| Oct. 23—Car CTH&SE | 7238 | " | " | 4 | " 24—Car OW | 15011 | " | " | 7 |
| " 20—Car PL | 703434 | " | " | 3 | " 27—Car BO | 322770 | " | " | 8 |
| " 25—Car NYC | 407922 | " | " | 5 | Erie Railroad Co. | | | | |
| " 25—Car CP | 347301 | " | " | 5 | Nov. 30—Car D&H | 26453 | " | " | 9 |
| Whitney & Kemmerer Co. | | | | | Lehigh Valley Railroad Co. | | | | |
| Oct. 30—Car C&O | 32272 | " | " | 6 | Dec. 10—Car C&O | 60917 | " | " | 10 |

A delivery to the carrier is for many purposes a delivery to the purchaser, but such delivery is constructive merely. The obligation to accept or reject the article arises, however, only upon an actual delivery. It is when the articles come under the observation of the purchaser and he is able to see whether they are such as he has ordered, that he is bound to elect whether to accept them or not. It is not his duty to go to the point where delivery is made to the carrier to inspect the articles before their shipment, for he has a right to rely on the good faith of the seller who has undertaken to fill his order according to its terms and ship to him by the ordinary modes of transportation, and when the articles reach him is the first time at which examination is practicable, and is the time contemplated by the contract. If the articles upon reaching their destination are not found to be such as the contract calls for, the seller has not performed on his part and has no right to ask performance to any extent from his vendee. If the vendee has just ground for refusing

Wilkey v. Fayette Fuel Company.

to accept the performance offered, it is very clear that he is under no obligation to his vendor than that of giving notice promptly of his refusal. The articles then are at the risk of the shipper and subject to the carrier's lien for freight: Fogel v. Brubaker, 122 Pa. 7. But to be effective, a notice for the rescission or termination of a contract must be clear and unambiguous, conveying an unquestionable purpose to insist on the rescission. And where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so: Wright v. Bristol Patent Leather Co., 257 Pa. 552; Wright v. General Carbonic Co., 271 Pa. 332.

"A vendee who receives a thing into his possession before he has become acquainted with its quality has, if dissatisfied, but one of two courses to pursue, either to retain it and claim a deduction, or reject it and attempt to rescind the contract. In pursuing the latter, he has no contract to enforce. His purpose is to get rid of the bargain by rejecting the vendor's performance of his part of it. To this end, it is necessary that he exercise no act of ownership or give the property no direction but what is necessary to send it in specie to the vendor. He is not at liberty to destroy it by wantonly exposing it; but on the refusal of the vendor to take it away he might leave it at his door, giving notice of the fact. But he might not send it to auction, because the necessities of the case would not require it:" Buffington v. Quantin, 17 Pa. 310; Estes v. Kauffman, 44 Pa. Superior Ct. 114; Arundel Sand and Gravel Co. v. Irwin, 70 Pa. Superior Ct. 546. But he may not retain a part and return a part of the property: Elzea v. Brown, 59 Pa. Superior Ct. 403; Lonker & Stevens v. Cohen, 78 Pa. Superior Ct. 73. After the actual reception of the goods and the lapse of a reasonable time to examine them and to ascertain their quality, the vendee's right to reject them must be exercised not only promptly, but unequivocally: Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224. Mere complaint as to the quality of the goods while exercising dominion over them inconsistent with ownership in the seller is not sufficient: Werbitsky v. Fisher, 64 Pa. Superior Ct. 284. Until rescinded, the contract remains in force: Sloan Corp. v. Linton, 260 Pa. 569.

The contract in the present case was between the plaintiff and the defendant, and the coal could be rejected by the defendant only if the defendant was persuaded that it was not tendered in accordance with the contract. The mere fact that the defendant's consignee was dissatisfied with the coal is not sufficient to warrant the defendant in rejecting it unless the defendant was so persuaded. The defendant was bound to accept the coal if up to the contract, but, if not, was under no obligation to sell or attempt to sell it to other customers: Irwin Gas Coal Co. v. Logan Coal Co., 270 Pa. 443. Where a purchaser of coal takes it and exhibits acts of ownership over it, his subsequent disposition of it is at his own risk. If such coal be accepted by the purchaser, who knows of its inferior quality or has an opportunity to inspect it, and thereafter takes and disposes of the coal, he will be liable for the contract price. Under such circumstances, a claim by the defendant from the plaintiff for freight and demurrage paid by defendant is improper and cannot be sustained: Luella Coal and Coke Co. v. Gano, 61 Pa. Superior Ct. 37; Estes v. Kauffman, 44 Pa. Superior Ct. 114.

There is evidence in this case that in the regular course of dealing between the parties, whenever a purchase of coal was made by defendant from plaintiff, a memorandum of the purchase was made by a stenographer in defendant's office on a sheet of paper there for that purpose, from which the stenog-

rapher later took the data to make out what has been called a written order to the shipper of the coal. It is in evidence that a typewritten order was sent to the shipper each day for coal purchased that day, which order usually was mailed the same day the purchase was made, which order was received by the purchaser the same evening or the next morning. This order contained the data taken by the stenographer from her memorandum slip, showing the name of the consignee of the coal, the number and kind of cars containing the coal, the car initials and numbers, the grade or quality of the coal to be shipped, and the prices to be paid therefor, which order then was approved by the broker and sent to the shipper. The purpose of this was to avoid error as to the amount and quality and prices of the coal ordered. It is in evidence that this was done whether the coal was ordered by telephone or in person. If in person, the data was given to the stenographer by the purchaser immediately after the purchase was made. It is in evidence on behalf of the defendant that in case of every purchase of coal the quality of the coal was specified along with the other data, unless in case of a very low grade of coal, for which a low price was to be paid. All these typewritten orders, covering the cars of coal in controversy here, were called for by defendant's counsel at the trial, and were produced by the plaintiff personally, and thereupon were offered by defendant's counsel, and were admitted in evidence over the objection of plaintiff's counsel that they were but self-serving declarations, inasmuch as the contracts between the parties, it was alleged, were but oral, and it was contended by the defendant's counsel that the original oral contracts were merged in these orders, which had become written contracts, and which constitute in the evidence defendant's exhibits 1-11, inclusive. There was testimony on the part of the plaintiff that nothing ever was said when any of these cars of coal were ordered orally that the coal was to be of the quality specified in the typewritten orders afterwards sent to the plaintiff, but that all that was said was "Generally, Pool 31, not always."

As we view these transactions, the contracts originally were oral, and thereafter they were substantiated by written confirmation. The nearest and most satisfactory authority we have found under all the circumstances of this case, as to the admissibility of these typewritten orders relative to the quality of the coal required thereby, is in the text in 17 Cyc., 400, where, under the head "In Explanation of Parol Contracts," it is stated: "A memorandum relating to the terms of a parol contract made at the time by one of the parties negotiating the contract and read over to the other without dissent, or made by a third person under circumstances showing an assent thereto by the parties, although not in itself a valid written contract, may be competent as substantive evidence tending to establish, in connection with other evidence, the terms of the contract." It is true the memoranda in this case were not read over to the plaintiff without dissent, but each memorandum was mailed to plaintiff at about the time it was made up, and all these memoranda now in controversy, covering fifteen instances, during a period of four months, July, October, November and December, 1920, without objection to any of them by the plaintiff, with all the other evidence in the case tending to show a continued and well understood and general course of dealing between the parties, were competent.

At the trial, for the purpose of making out a *prima facie* case, as stated in the offer, plaintiff's counsel offered in evidence the third paragraph of plaintiff's statement, and the third and corresponding paragraph of the affidavit of defence, which paragraph of plaintiff's statement, it was alleged, was

admitted or not sufficiently denied in the affidavit of defence, and, therefore, it is contended, was to be taken as true, under authority of the Practice Act of May 14, 1915, P. L. 483, and Buehler v. United States Fashion Plate Co., 269 Pa. 428, at least for the purpose stated in the offer. Paragraph 3 of plaintiff's statement was: "During the months of June, July, August, September, October, November and December, 1920, and on the days in said months set forth in the attached statement, marked 'Exhibit A' and made a part hereof, the plaintiff agreed to sell, and did sell, and the defendant agreed to buy, and did buy, free on board cars at his, the plaintiff's, mines, all the coal then belonging to the said plaintiff, at the prices and in the amounts specified in plaintiff's Exhibit A." The third paragraph of the affidavit of defence, in answer thereto, was as follows: "Deponent admits that during the months of June, July, August, September, October, November and December, 1920, the defendant purchased certain coal from the plaintiff, which coal was to be of a certain character and quality. Except as admitted in paragraph 7 hereof, deponent denies the allegations of this paragraph of plaintiff's statement." In conformity with the purpose of the offer, to enable the plaintiff to make out a *prima facie* case, and for no other purpose, the objection was overruled, an exception was granted to defendant, and the matter was called to our attention at the argument and alleged as error. We are not convinced that the ruling on that point was sufficiently erroneous, if erroneous at all, as to require a rehearing of this case, especially in its present condition. Without discussing the authorities mentioned by plaintiff's counsel in connection with his offer, it is to be noticed that in the paragraph quoted from the affidavit of defence deponent admitted the purchase by the defendant of the coal here in controversy from plaintiff, adding that this coal was to be "of a certain character and quality." So far there was no denial of any part of plaintiff's statement. The use of the word "all" in the third paragraph of the statement was considered by everybody concerned as of no intended significance, the fifteen cars of coal here in controversy being the only coal to be affected thereby. Then appeared the following and final sentence quoted from the third paragraph of the affidavit of defence: "Except as admitted in paragraph 7 hereof, deponent denies the allegations of this paragraph of plaintiff's statement." Nowhere in the third paragraph of the affidavit of defence is anything said about the prices at which the coal in controversy was purchased. It is true that in the seventh paragraph of the affidavit of defence the question as to the price of some of these carloads of coal was raised by defendant's counsel on objection to offers by counsel for plaintiff, and the question then was heard on its merits fully, testimony having been offered on either side, and the court hereinafter in this opinion is deciding the matter favorably to the defendant.

In this case counsel for the parties have filed seventy-two requests for findings of fact and conclusions of law. We have answered all of these requests of record, whether all of them seem to us to be pertinent to the inquiry or not, as it is our duty to do: Hoyt v. Kingston Coal Co., 203 Pa. 509; Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118; Reid v. Reid, 237 Pa. 171; Glenn v. J. C. Trees Oil Co., 266 Pa. 74. We have made additional findings of fact and reached other conclusions of law, as stated in our own language, as follows:

1. The three cars of coal consigned by defendant to the Sharon Steel Hoop Company were not accepted by the consignee on account of defective quality, and the defendant was notified thereof by the consignee, but the defendant made no rejection of the coal. On the contrary, defendant took charge of the

coal and sold it on defendant's own responsibility at $8 per ton, which was $3 per ton, amounting to $500.70, less than the price at which it was billed by plaintiff to defendant, which was $11 per ton. Altogether in these three cars were contained 166.9 tons of coal, which, at $11 per ton, amounted to $1835.90, and which, at $8 per ton, amounted to $1335.20.

2. The three cars of coal consigned by defendant to the Seaboard By-Product Company were rejected by the consignee, who notified the defendant of the coal's rejection on account of inferior quality. Defendant carried on some negotiations in an effort to sell this coal at $2.50 per ton, there being 147.8 tons, which, at $2.50 per ton, would amount to $369.50, at which price it was billed by plaintiff to defendant as involved in this contention, although it had been billed earlier at a higher price. There was an agreement between plaintiff and defendant by which defendant was authorized by plaintiff to dispose of these three cars of coal to the best advantage. Defendant put forth its best efforts to make sale of the coal at some price, but was unable to get anything for it, and the coal was dumped by the railroad company, on whose tracks the cars of coal stood, without charge. Before the railroad company would dump the coal it required the defendant to pay the freight and demurrage due, amounting to $710.13, which defendant did pay, but the matter of these charges was not in contemplation between the parties in connection with their agreement already mentioned, and defendant was not authorized by plaintiff to pay the freight and demurrage charges.

3. The car of coal consigned by defendant to the Erie Railroad Company was rejected by the consignee on account of quality, and was taken charge of and sold by defendant. There were 46.35 tons of this coal, billed by plaintiff to defendant at $3.60 per ton, amounting to $166.86, but actually sold by defendant at $1.90 per ton, amounting to $88.06, making a difference of $78.80.

4. The car of coal consigned by defendant to the Lehigh Valley Railroad Company was rejected by the consignee on account of quality, and was sold by defendant for $1 per ton. There were 50.2 tons of coal in this car, which, at $3 per ton, the price at which it was billed by plaintiff to defendant, amounted to $150.60. The difference in price of $2 per ton would amount to $100.40. The amount for which it was sold by defendant was $50.20.

5. In case of each of the cars of coal already mentioned in these findings of fact, the quality of the coal in the particular case was not that required by the contract between the parties. In each case the consignee rejected the coal on account of poor quality and notified the defendant accordingly. The facts were made known to plaintiff, or to his office, in each case by complaints from defendant, but in no instance did the defendant reject the coal.

6. Of the seven cars of coal consigned by defendant to the Youngstown Sheet and Tube Company, the Whitney & Kemmerer Company and the Ore and Coal Exchange, it was denied that the prices to be paid were the prices charged in plaintiff's statement.

7. Cars 7238, 407922, 347301, consigned to the Youngstown Sheet and Tube Company, together containing 166.8 tons, are charged for in plaintiff's statement at $8 per ton, while the contract between the parties was that this coal was to be paid for at $7.75 per ton, making a difference of 25 cents per ton, amounting to $41.70.

8. Car 703434, consigned by the defendant to the same consignee, containing 51.9 tons, is charged for in plaintiff's statement at $8 per ton, while the contract between the parties was that this coal was to be paid for at $8.75 per ton, making a difference of 75 cents per ton, or a total difference of $38.93.

Wilkey v. Fayette Fuel Company.

9. Of Car 32272, containing 51.3 tons, consigned by defendant to the Whitney & Kemmerer Company, the coal is charged for in plaintiff's statement at $8 per ton, while the contract between the parties was that this coal was to be paid for at $7 per ton, making a difference of $51.30.

10. The two cars, 322589 and 50024, consigned by defendant to the Ore and Coal Exchange, containing in all 106.95 tons, are charged for in plaintiff's statement at $4.80 per ton, while the contract between the parties was that this coal was to be paid for at $4.70 per ton, making a difference of 10 cents per ton, or $10.70.

We, therefore, reach the following conclusions of law:

1. The plaintiff is entitled to recover in this action the principal of his claim, to wit, $1843.06, subject to the deductions hereinafter specified.

2. The sum of $1835.90, mentioned in our first finding of fact, is entitled to stand as a legitimate part of plaintiff's claim.

3. The sum of $369.50, mentioned in our second finding of fact, must be eliminated and deducted from plaintiff's claim.

4. The item of $166.86, as calculated and contained in our third finding of fact, is entitled to stand as a legitimate part of plaintiff's claim.

5. The item of $150.06, as calculated and contained in our fourth finding of fact, is entitled to stand as a legitimate part of plaintiff's claim.

6. The sum of $41.70, mentioned in our seventh finding of fact, must be eliminated and deducted from plaintiff's claim.

7. The plaintiff cannot recover for a larger item than the one claimed for in his statement, and, therefore, the item of $38.93, mentioned in our eighth finding of fact, cannot be added to the amount of plaintiff's claim.

8. The sum of $51.30, noted in our ninth finding of fact, must be eliminated and deducted from plaintiff's claim.

9. The item of $10.70, mentioned in our tenth finding of fact, must be eliminated and deducted from plaintiff's claim.

10. The defendant is not entitled to any reduction in the amount of plaintiff's claim on account of either freight or demurrage paid by defendant, as mentioned in our second finding of fact.

11. The item of $1335.20, received by the defendant from its sale of the Sharon Steel and Hoop Company coal, noted in our first finding of fact; the item of $88.06, received by the defendant from its sale of the Erie Railroad Company coal, noted in our third finding of fact; and the item of $50.20, received by the defendant from its sale of the Lehigh Valley Railroad Company coal, noted in our fourth finding of fact, altogether amounting to the sum of $1473.46, still is in the hands of the defendant.

12. Deducting from the principal sum of $1843.06, which plaintiff otherwise would be entitled to receive, the item of $369.50, noted in our third conclusion of law; that of $41.70, noted in our sixth conclusion of law; that of $51.30, noted in our eighth conclusion of law; and that of $10.70, noted in our ninth conclusion of law, which together amount to $473.20, there is left the sum of $1369.86, the correct amount due the plaintiff.

13. The plaintiff is entitled to interest on the balance of his claim due from May 19, 1922, the time of the institution of this suit.

And now, Nov. 27, 1923, it is ordered that judgment be entered in favor of the plaintiff and against the defendant for the sum of $1369.86, with interest thereon from May 19, 1922; this decree to be entered nisi according to rule.

From Luke H. Frasher, Uniontown, Pa.

NOTE.—Syllabus by the Court.