# Irwin Gas Coal Co. *v.* Logan Coal Co., Appellant.

*Contract—Sale—Sample—Warranty—Act of May 19, 1915, sec. 16, P. L. 543—Evidence—Competency—Credibility—Analysis of coal.*

1. A sale by sample carries with it an implied warranty that the bulk shall correspond with the sample in quality.

2. In an action to recover for breach of a contract to purchase coal sold by sample, the purchaser is entitled to prove the chemical contents of what the evidence indicated was a sample of the rejected coal.

3. The witness was competent to state what his chemical analysis disclosed although the identity of the sample, and whether it was a fair specimen, depended on parol evidence.

4. The fact that the analysis was long delayed, may detract from the weight of the evidence, but does not destroy its competency.

5. Nor does the fact that no analysis was made of the sample of coal on which the purchase was based, destroy the competency of such evidence, if there was other evidence of the chemical contents of coal similar to the sample.

6. The purchaser was bound to accept the coal if up to contract, but, if not, was under no obligation to sell or attempt to sell it to other customers.

7. If the purchaser did not cancel or attempt to cancel the contract, he would be liable for the loss sustained by the seller on coal refused, which in quality was equal to the sample, whether such refusal was made upon or without inspection.

*Appeals — Charge — Contradictory statements in charge — Reversal.*

8. Where the trial judge made both correct and incorrect statements of law in his charge, so that it is impossible to tell whether the jury followed the correct or incorrect instructions, the judgment will be reversed.

Argued March 21, 1921. Appeal, No. 264, Jan. T., 1921, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1919, No. 530, on verdict for plaintiff, in case of Irwin Gas Coal Co. v. Logan Coal Co. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for breach of contract. Before MCCUL-LEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $4,733.86. Defendant appealed.

*Errors assigned* were rulings and instructions, recited in the opinion of the Supreme Court, quoting record.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Madeira,* for appellant.—This case is ruled by West Republic Mining Co. v. Jones, 108 Pa. 55. See, also, Albany Iron & Steel Co. v. Lundberger, 121 U. S. 451; Mish v. Wood, 34 Pa. 451; Folkman v. Lauer, 244 Pa. 605.

*Robert T. McCracken,* with him *Roberts, Montgomery & McKeehan,* for appellee.—The testimony of the expert witness was properly excluded: Boyd v. Wilson, 83 Pa. 319; West Republic Mining Co. v. Jones, 108 Pa. 55; Groff v. Groff, 209 Pa. 603.

The appellee was entitled to binding instructions as to all coal not inspected before rejection.

OPINION BY MR. JUSTICE WALLING, May 9, 1921:

The plaintiff is a coal mining corporation, with head-quarters at Greensburg, Pa., and defendant is a corporation engaged in the coal business with principal office in Philadelphia. In April, 1917, plaintiff sold defendant a sample lot of ten cars of best run of mine Irwin gas coal which, at defendant's request, was delivered to its customer, the Martin Dyeing & Finishing Company of Bridgeton, N. J., and proved satisfactory. Thereafter, in May, 1917, plaintiff entered into a written contract to sell defendant eleven thousand five hundred tons of coal, same quality as the ten-car sample, to be delivered to said Martin Company at approximately a thousand tons a month. Satisfactory deliveries were made during May and June, but in July the Martin Company refused to accept a shipment of ten carloads of the coal on account of alleged defective quality. Defendant, upon inspection, justified such refusal on the claim that the contents of the last-named ten cars were more than one-half foreign matter, consisting of limestone, slate, clay, etc., rendering the same unfit for fuel and being entirely different from and inferior to the sample lot. All of this was denied by plaintiff, who tendered further shipments during July and August, in amounts complying with the contract, which were refused without inspection. In September, however, after some negotiations, deliveries were renewed and continued without further complaint until the end of the term specified in the contract. The coal so rejected in July and August was resold by plaintiff at a loss of $4,001.76, to recover which, with interest, this suit was brought. Defendant set up the alleged defective quality of the coal so rejected and also claimed an offset of what its profits would have been thereon. The case hinged on the quality of the rejected coal and as to that the evidence was very conflicting. The jury found for the plaintiff for the full amount of its claim, and, from judgment entered thereon, defendant brought this appeal.

The sale being by sample, there was an implied warranty that the bulk should correspond with the sample in quality (sec. 16, Act of May 19, 1915, P. L. 543, 547), and the evidence was to the effect that such coal as the contract called for should contain about thirty-six per cent of volatile matter and about fifty-six per cent of carbon. In connection therewith defendant offered to prove the chemical contents of what the evidence indicated was. a sample of the rejected coal. On objection this evidence was excluded; it should have been admitted.. The witness was competent to state what his chemical analysis disclosed, although the identity of the sample, and whether it was a fair specimen, depended upon parol evidence. The fact that the analysis was long delayed, and other circumstances, may detract from the weight of the evidence but do not destroy its competency; nor does the fact that no analysis was made of the ten-car sample, as there was other evidence of the chemical contents of similar coal. "Chemical analysis of ore received under the terms of a contract may be admitted in evidence, although no chemical analysis of the sample, which the ore was stipulated to equal, has been made": Mining Co. v. Jones, 108 Pa. 55.

The trial judge affirmed, without qualification, plaintiff's fifth point, viz: "The contract in this case was between the plaintiff and the defendant, and the coal could be rejected by the defendant only if the defendant was persuaded that it was not tendered in accordance with the contract. The mere fact that the defendant's consignee was dissatisfied with the coal is not sufficient to warrant the defendant in rejecting it unless the defendant was so persuaded. If the defendant could have sold the coal to any other customer and thus lived up to its obligations under the contract, it was bound to do so. There is no evidence that the defendant sold or attempted to sell either the ten cars rejected in July or the balance of the July and the August shipments to any of its other customers." The last part of this point

is wrong. Defendant was bound to accept the coal if up to contract, but, if not, was under no obligation to sell or attempt to sell it to other customers; yet the point seems to impose that duty upon defendant. True, in other parts of the charge the law was correctly stated; but, in such case, as it is impossible to know whether the jury followed the correct or incorrect instructions, a new trial must be granted.

Defendant did not cancel or attempt to cancel the contract, therefore it would be liable for the loss sustained by plaintiff on coal, if any, refused in July and August, which in quality was equal to the sample, whether such refusal was made upon or without inspection.

For the reasons above stated, the judgment is reversed and a venire facias de novo awarded.